IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ANGELITA SANDERS,<br><br>Plaintiff,<br><br>v.<br><br>J.C. PENNEY CORPORATION, INC.,<br><br>Defendant | Civil Action<br>File No.:   1:11-CV-02759-JOF |

**J.C. PENNEY CORPORATION, INC.'S CONCISE STATEMENT
OF MATERIAL FACTS TO WHICH NO GENUINE ISSUE
EXISTS TO BE TRIED AND THEORIES OF RECOVERY**

COMES NOW Defendant, J.C. Penney Corporation, Inc.("JCP"), by and through the undersigned counsel of record, and files this Statement of Material Facts to Which No Genuine Issue Exists to be Tried and Theories of Recovery, showing the Court as follows:

1.

On October 1, 2010, Ms. Sanders, a veteran and former employee at numerous retail establishments, left her job at Dillard's, walked through the mall, and then she entered the JCP store located in Savannah, Georgia to shop for some pants for her son.  (See Exhibit A, pgs. 33-36, pg. 46-47, pg. 50, pg. 53, pg. 55 & 62, lines 1-2; Exhibit "I" attached to the Memorandum of Law).

2.

While shopping for her son, Ms. Sanders claims that she was injured when a merchandise shelf fell and struck her. (See Ex. A, pg. 63 attached to the Memorandum of Law).

3.

JCP operated the store where Ms. Sanders was allegedly injured. (See Exhibit "J", paragraph 5 attached to the Memorandum of Law).

4.

At the time of the subject incident, several JCP employees interacted with Ms. Sanders, including Chaquita Lewis, the visual supervisor at the time of the incident, Jill Evans, the Men's Department Supervisor at the time of the incident, Beverly Jackson, a sales associate, Ernestine Hilson, the loss prevention supervisor, and Carol Hall, a customer service associate. (See Exhibit "C", pg. 6, line 2; Exhibit "D", pg. 7, line 4; Exhibit "E" pg. 7, line 4; Exhibit "F", as pg. 6, line 1; Exhibit "G", pg. 5, line 20-25, attached to the Memorandum of Law).

5.

The visual team of JCP was responsible for the hardware in the stores: ex. the merchandise shelves; (Ex. C, pg. 6, line 12-15); this team is also responsible for installing the shelves. (A true and accurate copy of Tom Duff's deposition is

attached hereto as Exhibit "H," pg. 7, line 22). The visual team was also responsible for going back and periodically checking the stability of the shelves. (Ex. C, pg. 10, line 14-19).

6.

Ms. Sanders claims that she entered JCP to shop for some pants for her son; after being in the store for about five to ten minutes, she went up to a merchandise rack and pulled three different color pairs of pants from the shelf from three different stacks; the pants were grouped by color. (Ex. A, pg. 62, lines 1-2, 15, pg. 63, & pgs 69-70, lines 25-5).

8.

When Ms. Sanders was looking at the merchandise shelf and retrieving the pants, the shelf looked fine. (Ex. A, 73, line 14).

9.

Ms. Sanders gave varied and contradictory testimony regarding how the incident occurred. In Ms. Sanders deposition for this case, she testified that while Ms. Sanders was holding the three pairs of pants, she heard something falling; she looked up and saw a merchandise shelf falling towards her; she then put her hand up but the shelf and the signage all fell and Ms. Sanders's finger and head were allegedly struck by the shelf. (Ex. A, pg. 63, lines 11-16 & pg. 71, lines 12-14; pgs.

100-101 & 103, lines 13-25). This shelf did not have any merchandise on it at the time of the incident, according to Ms. Sanders. (Ex. A, pg. 82, line 19). Rather, the shelf that struck Ms. Sanders only had a sign on top of it. (Ex. A, pg. 89, line 14).

10.

After the shelf allegedly fell, Ms. Sanders called out; Ms. Beverly Jackson came over and helped Ms. Sanders with the shelf. (Ex. A, pg. 104). At this time, Ms. Sanders again inspected the shelf and did not notice anything wrong with the shelf. (Ex. A, pg. 73, line 19).

11.

Other JCP employees also came up and helped Ms. Sanders following the incident, including getting a chair for her. (Ex. A, 112, line 21; pg. 114, line 4). The JCP personnel aided Ms. Sanders with reporting the incident. (Ex. A, pg. 116).

12.

After this investigation, Ms. Sanders purchased two pairs of pants and left the store. (Ex. A, pg. 139, line 7).

13.

When questioned how the shelf was supported, Ms. Sanders gives contradictory testimony regarding whether the shelf was supported by a bracket and whether she saw any parts for the shelf on the ground following the incident. Ms.

Sanders testified that she had no knowledge about how the shelf was affixed or mounted to the wall, including whether the shelf was affixed with a bracket or whether the shelf had a rubber part. (Ex. A, pg. 96, line 14; pg. 141, line 1).

14.

However, Ms. Sanders also testified that she saw Ms. Jackson affix a bracket to the wall to rehang the shelf following the incident. (Ex. A, pg. 107, lines 15-17).

15.

Finally, Ms. Sanders further testified that she did not know what the other female JCP employee picked off of the ground after the shelf fell, what that employee was doing at the wall or whether that employee affixed a bracket to the wall following the incident. (Ex. A, pg. 106-107; pg. 109, line 1). Rather, Ms. Sanders admitted that she just assumed that this other female JCP employee was fixing a bracket or something on the wall. (Ex. A, pg. 109, lines 7; pg. 124, line 11).

16.

Likewise, Ms. Sanders gave contradictory testimony regarding what Ms. Jackson told her after the incident. At first, while Ms. Jackson and another associate were helping Ms. Sanders, Ms. Sanders claims that Ms. Jackson seemed "perturbed." (Ex. A, pg. 115, lines 21-25). Ms. Jackson then stated that she had told "them" about

the shelf and that she knew that it was going to happen because the shelf had been missing bolts for a while. (Ex. A, pg. 116).

17.

Later, Ms. Sanders again changed her testimony and stated that Ms. Jackson actually said that "it's not screwed to the wall properly," (Ex. A, pg. 118, lines 16-18) and that Ms. Jackson did not tell Ms. Sanders that the shelf was missing a bolt. (Ex. A, pg. 118, lines 23-25).

18.

In a deposition no more than a few months prior to her deposition in this case, Ms. Sanders testified that while shopping in a JCP for some pants for her son, a board fell from the ceiling and struck her. (See Exhibit "B", pg. 14, lines 4-5 attached to the Memorandum of Law). This is another example of contradictory testimony.

19.

Each merchandise shelf is supported by two brackets; the brackets are inserted into the wall; the shelf is then placed on top of both brackets, which have rubber suction tips on the ends; the suction tips are inserted into two small holes on the underside right and left of the shelf and the shelf is kind of "snap[ped]" down. ( Ex. C, pg.).

20.

The subject shelves in JCP have been on the wall since either 2002 or 2003; and there has never been a problem with the shelf prior to the incident and JCP did not know about any problem with the shelf. (Ex. C, pg. 10, lines 8-11 & pg. 18, lines 1-4; Ex. G, pg. 13, Ex. F, pg. 14, line 21, & Ex. D, pg. 30, lines 23-25; the Affidavit of Earnestine Hilson is attached to the Memorandum of Law as Exhibit "K").

21.

In fact, when the shelf and bracket are properly installed, the shelf is fully supported and will not fall. (Ex. C, pg. 31, line 7).

22.

The shelf is neither bolted to the wall in any way nor is it supposed to be bolted to the wall for support. (Ex. D, pg. 23, line 12). Further, the shelf is not screwed into the wall. (Ex. C, pg. 14; Ex. D, pg. 23, line 13-25).

23.

The shelves are regularly inspected by JCP personnel. (Ex. C, pg. 10, lines 17-19 & pg. 13, lines 3-5).

24.

In fact, the shelves in the Men's Department in JCP, which is where the subject incident occurred, were inspected on September 17, 2010, less then two weeks prior to Ms. Sanders' alleged incident. (Ex. K).

25.

When the loss prevention supervisor at JCP conducts these Store Self Inspections, she walks around to the different departments. (Ex. K). When she inspects the shelves, she inspects them both visually and physically: i.e. looking to make sure there are no problems and putting her hands on the shelves to make sure they are stable. (Ex. K). At that time, it was noted that the fixtures and shelves were stable, secure, and free of sharp edges. (Ex. K).

26.

In the couple weeks leading up to the subject incident with Ms. Sanders, JCP did not know about any problems with the subject shelf. (Ex. K).

27.

Additionally, when a JCP associate cleans the shelves, if a problem if noticed with the shelf, the associate will contact management to notify them of the problem so the problem can be corrected. (Ex. C, pg. 30, line 15).

28.

Ms. Jackson was one of the first JCP employees on the scene. She overheard Ms. Sanders call out; she rushed over, called to Carol Hall, and she testified that they removed some merchandise from the shelf. (Ex. E, pg. 8, lines 6-25).

29.

At this time, Ms. Sanders was holding the shelf. Ms. Jackson grabbed the shelf, which was not heavy at all. (Ex. E, pgs. 9-10). When Ms. Jackson inspected the shelf, she did not notice any problems with the shelf. Furthermore, Ms. Jackson did not tell Ms. Sanders that there were any problems with the shelf. (Ex. E, pg. 23, line 20).

30.

Similarly, Ms. Hall came over and noted that the shelf was not missing any parts. (Ex. H, pg. 9, line 18). When she inspected the brackets, the brackets were not bent or damaged in any way. (Ex. G, pg. 18, line 3). Ms. Hall was able to make sure both brackets were inserted into the wall, put the shelf up on the brackets, and then put the merchandise back on the shelf. (Ex. G, pg. 18, lines 7-9).

31.

These investigations were confirmed by Ms. Hilson when she came to execute an incident report; she noted that there was nothing wrong with the shelf. (Ex. F, pg. 19, line 12; Ex. K).

32.

Ms. Evans was also paged to investigate the incident. When she arrived, Ms. Jackson had the shelf in her hands. (Ex. D, pg. 9, lines 17-25). Ms. Evans made sure

that Ms. Sanders was all right and asked Ms. Sanders whether she wanted to make a report of the incident. (Ex. D, pg. 10, lines 16-25). Ms. Evans then called over Ms. Lewis to make sure everything was all right with the shelf. (Ex. D, pg. 11, lines 5-8).

33.

When Ms. Lewis arrived on scene to investigate the incident, she noted that the shelf was still hanging on the wall; the shelf was leaning to the left though. (Ex. C, pg. 20, lines 19-22). Ms. Lewis did not notice anything out of the ordinary when she inspected the right and left brackets, the vertical strip that supported the bracket, or the shelf. (Ex. C, pg. 25, line 17). Ms. Lewis then secured the brackets to the wall and set the shelf back on top of both brackets. (Ex. C, pgs. 13-14).

34.

Ms. Sanders contacted Ms. Jackson after the subject incident. (Ex. A, pg. 134). Ms. Jackson stated that Ms. Sanders contacted her and claimed that Ms. Jackson would be compensated well if Ms. Jackson testified for Ms. Sanders. (Ex. E, pg. 21, lines 2-12).

## THEORIES OF RECOVERY

This Court should grant JCP's motion for summary judgment because:

1.

The undisputed evidence shows that JCP had no knowledge that any problem or defect existed with the subject shelf, making summary judgment proper.

2.

The undisputed evidence shows that no defect existed on the premises, making summary judgment proper.

This 6th day of February, 2012.

> Goodman McGuffey Lindsey & Johnson, LLP
> Attorneys for J.C. Penney Corporation, Inc.
>
> By:   *s/ JAMES T. HANKINS, III*
> JOSHUA S. STEIN
> GA State Bar No.  141925
> jstein@gmlj.com
> JAMES T. HANKINS, III
> GA State Bar No.  188771
> jhankins@gmlj.com
> 3340 Peachtree Road NE, Suite 2100
> Atlanta, GA 30326-1084
> Phone:  (404) 264-1500
> Fax:    (404) 264-1737

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ANGELITA SANDERS,<br><br>Plaintiff,<br><br>v.<br><br>J.C. PENNEY CORPORATION, INC.,<br><br>Defendant | Civil Action<br>File No.:      1:11-CV-02759-JOF |

**CERTIFICATE OF COMPLIANCE**

The foregoing document is double spaced in 14 point Times New Roman font and complies with the type-volume limitation set forth in Local Rule 7.1.

                         *S/JAMES T. HANKINS, III*
                         James T. Hankins, III
                         Goodman McGuffey Lindsey & Johnson, LLP
                         3340 Peachtree Road NE, Suite 2100
                         Atlanta, GA 30326-1084
                         Phone:  (404) 264-1500
                         Fax:    (404) 264-1737
                         Email:  jhankins@gmlj.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ANGELITA SANDERS, <br><br> Plaintiff, <br><br> v. <br><br> J.C. PENNEY CORPORATION, INC., <br><br> Defendant | Civil Action <br> File No.:   1:11-CV-02759-JOF |

**CERTIFICATE OF SERVICE**

This is to certify that I electronically filed this J.C. PENNEY CORPORATION, INC.'S CONCISE STATEMENT OF MATERIAL FACTS TO WHICH NO GENUINE ISSUE EXISTS TO BE TRIED AND THEORIES OF RECOVERY with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Brent J. Savage, Esq.
Brent Jamieson Savage, Jr., Esq.
Savage, Turner, Kraueter, Pinckney & Madison
P.O. Box 10600
Savannah, GA 31412

This 6th day of February, 2012.

                                     *s/ JAMES T. HANKINS, III*
                                     JAMES T. HANKINS, III
                                     GA State Bar No.  188771
                                     jhankins@gmlj.com
                                     Goodman McGuffey Lindsey & Johnson, LLP
                                     3340 Peachtree Road NE, Suite 2100
                                     Atlanta, GA 30326-1084
                                     Phone:  (404) 264-1500
                                     Fax:   (404) 264-1737

2123-0007/Doc ID #1682464