**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| Angelita Sanders, | : |
| | : |
| Plaintiff, | : |
| | : CIVIL ACTION NO. |
| v. | : |
| | : 1:11-cv-02759-JOF |
| J. C. Penney Corporation, Inc., | : |
| | : |
| Defendant. | : |

## **ORDER**

This matter is before the court on Defendant's motion for summary judgment [20].

**I.   Background**

   **A.   Procedural History and Facts**

Plaintiff, Angelita Sanders, filed suit against Defendant, J.C. Penney Corporation, Inc., in state court alleging that she was injured when merchandise fell off a shelf and struck her. Defendant removed the suit to this court on August 18, 2011, and the parties engaged in discovery. Defendant then filed the instant motion for summary judgment.

On October 1, 2010, Plaintiff left her job at Dillard's department store, walked through the mall, and entered the J.C. Penney store in Savannah, Georgia to shop for pants for her son.[1] After shopping for five to ten minutes, Plaintiff went up to a merchandise rack

---

[1]The court takes the facts from the statement of undisputed facts presented by Defendant and Plaintiff's response thereto. The court notes that with respect to numerous statements, Plaintiff simply responds "denied as cast." This is not an acceptable response

and pulled three different colored pairs of pants from the shelf from three different stacks, as the pants were grouped by color. Plaintiff did not notice any problem with the shelf at this time.

In her deposition in the instant case, Plaintiff testified that while she was holding the three pair of pants, she heard something falling, looked up, and saw a merchandise shelf falling toward her. She put up her hand, but the shelf and attached signage fell and her finger and head were struck by the shelf. Plaintiff called out and Beverly Jackson, a sales associate, rushed over to help Plaintiff with the shelf. Jackson also called over Carol Hall, a customer service associate. Jackson and Hall could not see any problems with the shelf. Plaintiff looked at the shelf again and could not see anything wrong with it. Earnestine Hilson, J.C. Penney's loss prevention manager, also conducted an investigation and could not determine anything wrong with the shelf. Chaquita Lewis, the "visual" team supervisor, also responded and could not determine that anything was wrong with the shelf. She assisted in replacing the shelf and brackets on the wall.

---

under this court's Local Rules. If a plaintiff denies a statement of fact asserted by the defendant, the plaintiff must provide citations to the record to support his denial. Therefore, the court deems admitted any facts to which Plaintiff has responded "denied as cast." *See* Local Rule 56.1(B)(2)(a)(2)(i) (fact deemed admitted unless respondent "directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number)"). Similarly, those facts to which Plaintiff responds only that she "has no personal knowledge" are also deemed admitted. *See* Local Rule 56.1(B)(2)(a)(4) ("The response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of Fed. R. Civ. P. 56(d).").

Plaintiff watched Jackson and Hall affix a bracket to the wall and rehang the shelf following the incident.  Plaintiff also saw another female J.C. Penney employee pick something off the ground after the shelf, but does not know what that employee did or saw.  Other J.C. Penney employees responded to Plaintiff and assisted her in reporting the incident.  After the investigation, Plaintiff purchased two pair of pants and left the store.

Plaintiff testified that Jackson made comments to her:

Q: Okay.  Tell me everything that Beverly said to you that day.

A: She approached me.  She was – seemed to be a little perturbed.  She said, I've told them about this shelf.  I knew this was going to happen.  This shelf has been missing bolts for a while.

*See* Sanders Depo., at 115.  The testimony continued:

Q: Okay.  And so Beverly told you while you were there that day, she said something – tell me as close as you can what she told you about telling somebody about the shelf.

A: She said, I've told them about this shelf several times.  The shelf is missing a bolt.  And I've told them to fix it or something, she said.  And she was – I don't know if she was talking to me or talking to the other lady, but she was talking.  And that was all she said.

Q: Okay.  And did she mention to you or to anybody who she had told about the shelf?

A: No.  She didn't tell me anything.

Q: Okay.  All you heard was I've told them?

A: Yes.

3

> Q: And she said it was missing a bolt?
>
> A: She said – she said – her exact words were, I've told them it's not screwed to the wall properly.
>
> Q: Okay.
>
> A: That's what she said.
>
> Q: So the part about it's missing a bolt, she didn't actually say that?
>
> A: No, that's what she – I had to think about it. She said, I told them that it hadn't been screwed to the wall properly. That's what she said.

*Id.* at 117-18. Jackson denies making these comments.

During a deposition taken a few months before her deposition in this case, Plaintiff testified that while shopping at J.C. Penney for some pants for her son, a board fell from the ceiling and struck her.

The "visual" team at J.C. Penney is responsible for the "hardware" in the store; that is, installing and maintaining the merchandise shelves. Each shelf is supported by two brackets. The brackets are inserted into the wall and the shelf is then placed on top of both brackets. The brackets have rubber suction tips on the ends and those tips are inserted into two small holes on the underside right and left of the shelf. The shelf is then "snapped down" onto the brackets. There are no bolts or screws involved with the shelf.

The subject shelves have been on the wall at J.C. Penney since either 2002 or 2003 and there has never been a problem with the shelf prior to the incident. J.C. Penney was not

aware of any problem with the shelf. The shelves in the men's department were inspected on September 17, 2010, less than two weeks prior to Plaintiff's accident. During inspection, the shelves are observed visually and physically. The inspection reports shows the shelves and fixtures were stable, secure, and free of sharp edges.

### B.    Contentions

Defendant argues that the court cannot consider Plaintiff's recounting of Jackson's statements to her after the shelf fell because even assuming Jackson made the statements, they are not admissible. Without Jackson's statements, there is no evidence that Defendant had actual knowledge of any problem with the shelf. Further, Plaintiff cannot show that Defendant had constructive knowledge of the hazard. While she was in the vicinity, Jackson was not near enough to the shelf to have easily seen any problems with it. Defendant employed a physical and visual inspection procedure for the shelves. The shelf in question was inspected by Hilson less than two weeks before the incident.

Plaintiff responds that based on Jackson's statement to Plaintiff at the time of the incident, there is sufficient evidence to demonstrate that Defendant had actual knowledge of the hazard. Plaintiff also argues that Defendant had constructive knowledge because Jackson was in the immediate vicinity of the shelf and had the opportunity to correct the hazardous condition. Further, Plaintiff avers that Defendant had constructive knowledge of

5

the hazardous shelf because Jackson admitted that the shelf had been missing "bolts" for some time and was not properly affixed to the wall.

## II.  Discussion

### A.  Evidentiary Issues

Before discussing premises liability issues, the court must address the admissibility of Plaintiff's testimony concerning the statements of Jackson at the time of the incident. As the court described above, in her deposition, Plaintiff testified that Jackson said "I've told them about this shelf. I knew this was going to happen. This shelf has been missing bolts for a while." Alternatively, Plaintiff testified that Jackson said the shelf "hadn't been screwed to the wall properly." Although this is a diversity action where Georgia law governs the substantive issues, "the admissibility of evidence in federal courts is governed by federal law." *See*, *e.g.*, *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154 (11th Cir. 2004); *Borden, Inc. v. Florida East Coast Ry. Co.*, 772 F.2d 750, 754 (11th Cir. 1985).

Plaintiff has argued that Jackson's statements fit into the hearsay exception for statements made "by [a] party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," which are deemed admissions of a party opponent. *See*, *e.g.*, *Horne v. Turner Constr. Co.*, 136 Fed. Appx. 289 (11th Cir. 2005) (citing Fed. R. Evid. 801(d)(2)(D)). A party seeking to introduce an admission has the burden of establishing that "the content of the declarant's statement

6

concerned a matter within the scope of his agency." *See Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1565, 1566 (11th Cir. 1991). The court must determine whether the speaker "was authorized to act for his principal . . . concerning the matter about which he allegedly spoke." *Id.* at 1566.

In *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548 (11th Cir. 1998), the court discussed the meaning of "agent or servant" in the context of Federal Rule of Evidence 801(d)(2)(D). The court stated that because the terms "agent or servant" are not defined in Rule 801(d)(2)(D), the court "assume[d] that Congress intended to refer to general common law principles of agency when it used the term." *Id.* at 557 n.9. The court further said that under the Federal Rules of Evidence "it is [not] necessary to show that an employee or agent declarant possesses 'speaking authority,' tested by the usual standards of agency law, before a statement can be admitted against the principal." *Id.* at 558 n.10 (citing *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.3d 1560, 1565 (11th Cir. 1991)).

*Wilkinson* is applicable to the instant facts. There, a passenger sued a cruise line for injuries she sustained when an automatic sliding glass door ran over her toes. One of the plaintiff's traveling companions had a conversation about the accident with a cabin steward who told her that he felt bad about the incident. He went on to state they had been having problems with the door and he hoped that they would get it fixed before it happened to a child. The cruise line argued that the companion's exchange with the cabin steward was not

7

admissible as hearsay while the plaintiff contended the statements would be an admission of the cruise line through its employee and therefore an exception to hearsay under Rule 801(d)(2)(D). To support its position, the cruise line admitted the declaration of a member of its operations department who explained that cabin and room stewards were the most junior employees on the vessel. Their job function was to clean rooms and they were not authorized to speak or make admissions on behalf of the cruise line. They were restricted to certain portions of the ship and not permitted in the passenger area near the pool where the sliding glass room that injured the plaintiff was located.

The district court admitted the testimony under Rule 801(d)(2)(D) and the Court of Appeals reversed that ruling. The Court of Appeals recognized that nothing in Rule 801(d)(2)(D) "prevents the out-of-court statements of low-level employees from coming into evidence as non-hearsay admissions of a party-opponent in appropriate factual circumstances." *Id.* at 1565. "[C]orporate hierarchy is not in and of itself determinative of an 801(d)(2)(D) type of issue. *Id.* But neither does the cabin steward's status as a member of the crew mean that 801(d)(2)(D) applies. *Id.* "The appropriate focus is instead upon whether the cabin steward's statement concerned a 'matter within the scope of [his] agency or employment.'" *Id.* The test is no longer the traditional "speaking authority" test of the usual standards of agency law. "But it is necessary, in order to support admissibility, that the content of the declarant's statement concerned a matter within the scope of his agency."

8

*Id.* "Thus, the inquiry is whether [the cabin steward] was authorized to act for his principal [the cruise line], concerning the matter about which he allegedly spoke." *Id.* at 1566. The Court of Appeals found that he was not and therefore his testimony should have been excluded. *Id.*

Similarly, here, the court finds that Defendant submitted undisputed evidence that Jackson was not responsible for keeping the stock floor free of hazards. The testimony of Chaquita Lewis demonstrates that the "visual" team at J.C. Penney was responsible for the shelves. Hilson testified that as loss prevention manager she also conducted inspections of the store. Jackson was a customer service sales associate who did not have responsibility for the shelving. Therefore, her alleged comments concerning the state of the merchandise shelf are not admissible against Defendant under Rule 801(d)(2)(D).

Plaintiff, however, also appears to argue that Jackson's statements are admissible under the "res gestae" exception to the hearsay rule. Plaintiff cites O.C.G.A. § 24-3-3; *Sutton v. Winn Dixie Stores, Inc.*, 233 Ga. App. 424, 426 (1998) and *Quiktrip Corp. v. Childs*, 220 Ga. App. 463, 469 (1996), for this proposition, but again, the court must apply federal law to this question.

In federal court, this exception is sometimes referred to as the "excited utterance" exception. *See*, *e.g.*, *FDIC v. Fidelity & Deposit Co. of Maryland*, 45 F.3d 969, 979 (5th

9

Cir. 1995) ("The old doctrine of 'res gestae' has been supplanted by Fed. R. Evid. 803.").

The Eleventh Circuit describes the excited utterance exception as follows:

> A hearsay statement is admissible under Rule 803(2) if it is one relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. While the declarant must still be under the stress or excitement that the startling event caused, the excited utterance need not be made contemporaneously to the starting event. It is the totality of the circumstances, not simply the length of time that has passed between the event and the statement, that determines whether a hearsay statement was an excited utterance.

*See United States v. Belfast*, 611 F.3d 783, 818 (11th Cir. 2010). *See also* Advisory Committee's Note on Fed. R. Evid. 803(2) (stating that theory behind exception is "circumstances may produce a condition or excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication").

There is no evidence in the record that Jackson's comments were made "under the stress of excitement caused by the event or condition." It is true that Jackson responded to Plaintiff's "calling out" when the shelf fell, but Jackson did not see the shelf falling and Jackson did not have any personal attachment to Plaintiff that might have caused her to be emotionally involved in the situation. Plaintiff's accident was not serious or life-threatening. While Plaintiff described Jackson as "perturbed," she did not state that Jackson was excited or agitated. *Cf. Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 818-19 (8th Cir. 2010) (permitting "excited utterance" testimony of witness to near-fatal skiing accident who rushed to scene where injured party was unconscious, bleeding from the mouth, turning blue, and

10

believed to be near death and witness described herself as "near panic"). For these reasons, the court finds that Plaintiff's testimony relating her recollection of the statements of Jackson on the day of the incident are inadmissable hearsay which cannot be considered by the court. Jackson's alleged statements could not be reduced to admissible evidence at trial because Jackson denies making those statements.

### B.     Negligence

O.C.G.A. § 51-3-1 provides:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

*Id.* With respect to premises liability litigation, under Georgia law, the plaintiff must prove "(1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *See Robinson v. Kroger Co.*, 268 Ga. 735, 748 (1997). Georgia courts show a general reluctance to determine as a matter of law that an invitee failed to exercise ordinary care and Defendant does not argue so in its motion for summary judgment. *See*, *e.g.*, *Hopkins v. Kmart Corp.*, 232 Ga. App. 515, 517 (1998); *Jones v. Ingles Markets, Inc.*, 231 Ga. App. 338, 341 (1998). Therefore, the court will not address further the issue of Plaintiff's ordinary care.

11

Because the plaintiff bears the burden of demonstrating actual or constructive knowledge, "the defendant may prevail on summary judgment by simply pointing out the absence of evidence in the record that the defendant had actual or constructive knowledge of the hazard." *Jones v. Ingles Markets, Inc.*, 231 Ga. App. 338, 340 n.1 (1998).

The court has discussed above that Plaintiff's reporting of Jackson's alleged statements concerning whether "bolts" were loose or there was a previous problem with the shelf is not admissible. Therefore, there is no testimony in this case that Defendant had actual knowledge of the hazard and the court focuses on constructive knowledge.

"Constructive knowledge may be based either on evidence that the dangerous condition lasted so long that the defendant should have discovered it, or on evidence that an employee of defendant was in the immediate vicinity and could have easily seen the problem." *Collins v. East R.S., Inc.*, 228 Ga. App. 627, 627 (1997). *See also Watkins v. Home Depot U.S.A., Inc.*, 259 Ga. App. 168, 169 (2002); *Roberson v. Winn-Dixie Atlanta, Inc.*, 247 Ga. App. 825, 825-26 (2001); *Herrin v. Peeches Neighborhood Grill & Bar, Inc.*, 235 Ga. App. 528, 531 (1998) (noting that plaintiff must show that defendant had "superior actual or constructive knowledge of the hazard").

The court has previously found that

> Georgia courts set a high bar as to whether an employee was in the vicinity and could have easily seen and removed the hazard. For example, in *Warberg v. Saint Louis Bread Company*, plaintiff Warberg slipped and fell on a plastic "Wet Floor" sign that was lying flat on the floor, rather than in its proper

12

> upright position. 255 Ga. App. 352, 352 (2002). Mrs. Warberg fell while moving toward the counter to place her order, yet an employee working behind the counter did not actually observe the accident, and only looked up when another customer mentioned the accident. *Id.* The employee stated that she had not previously seen the hazardous sign in the area of Mrs. Warberg's fall, despite being in a position to view the hazard, as the store was crowded and the counter blocked her view. *Id.* Other employees testified that in the immediate fifteen to twenty minutes before the accident, they had viewed the area and had not seen the sign lying flat on the floor, but rather had seen it upright variously against a wall or in the location of the accident. *Id.* at 352-53. In refusing to impute constructive knowledge, the Warberg court stated that not only must the employee be in the vicinity, but additionally there must be a finding that defendant's employee had the opportunity to discover and remove the hazard, "which can only be shown by evidence that the hazard existed for a length of time sufficient for defendant to discover the hazard and remove it." *Id.* at 355. *See also Coffey v. Wal-Mart Stores*, 224 Ga. App. 824, 828 (1997) (showing that "employee [was] merely working in the immediate area of a foreign substance is not enough; the employee must have been in a position to have easily seen the substance and removed it"); *Lovins v. Kroger Co.*, 236 Ga. App. 585, 586 (1999) (where employee was working in cheese section and not facing area in which fall occurred and showcase blocked her view of the area, plaintiff could not show employee could have easily seen foreign substance and removed hazard); *Hopkins v. Kmart Corp.*, 232 Ga. App. at 518-19 (holding that cashier at nearby register could not have seen hazard in aisle from where she was standing and rejecting as "pure speculation" idea that cashier should have heard "smash" of bottle breaking on floor).

*See Heath v. Wal-Mart Stores, Inc.*, Civil Action No. 1:08-CV-3665-JOF, Order, dated March 11, 2010, at 15–16.

Plaintiff here alleges that Jackson was in the vicinity when the shelf fell. However, there is no evidence in the record that Jackson had an opportunity to easily see and remove the hazard. Jackson was not looking toward Plaintiff and only responded when she heard

13

Plaintiff call out. There is no testimony that any problem with the shelf was readily noticeable.

However, even if Plaintiff cannot demonstrate that an employee was in the position to have easily seen and removed a hazard, Plaintiff can still show constructive knowledge by demonstrating that the hazard was present long enough that it should have been discovered through an inspection taken with reasonable care. *See*, *e.g.*, *Perkins v. Val D'Aosta Co.*, 305 Ga. App. 126, 128 (2010). Defendant has submitted the testimony of Hilson and Lewis to show that it had an inspection procedure in place through the "visual" team and loss prevention manager. This is sufficient evidence to carry Defendant's initial burden of showing it exercised reasonable care in inspection. *See*, *e.g.*, *Hopkins v. Kmart Corp.*, 232 Ga. App. 515, 517-18 (1998). Then, Plaintiff must show that the hazard was present long enough that knowledge of it can be imputed to the defendant. *Id.* at 518. "The length of time which must exist to show that the defendant had an opportunity to discover the defect will vary with the circumstances of each case (i.e.,) the nature of the business, size of the store, the number of customers, the nature of the dangerous condition and the store's location." *Id.*

In *Watts & Colwell Builders, Inc. v. Martin*, 313 Ga. App. 1 (2011), the plaintiff alleged that she was injured when the door to the handicapped bathroom stall broke off its hinge and fell on top of her. The building's maintenance supervisor testified that he would

14

do walk through inspections of the buildings every couple of weeks.  He also did a walk-through inspection of the restrooms approximately every six months.  *Id.* at 332.  The court found that the building landlord had neither "actual or constructive" knowledge of any hazard because "reasonable inspections" of the property were conducted.

Here, Defendant presented undisputed evidence that the shelves had been inspected less than two weeks before the incident.  Under these circumstances, the court finds that Plaintiff has not proffered any evidence from which the jury could conclude that Defendant had constructive notice of the hazard due to Defendant's failure to conduct reasonable inspections.  *See also Gootee v. Target Corp.*, 256 Fed. Appx. 253 (11th Cir. 2007) (affirming summary judgment in favor of defendant where plaintiff was injured by crock pots falling off shelf and plaintiff presented no evidence that employees of defendant were in area at time of incident, that hazard existed for any significant period of time prior to incident, that previous incidents occurred which might have put defendant on notice of hazard and defendant showed its employees were trained to patrol aisles and check for unsafe conditions and one had been through aisle shortly before incident); *Freeman v. Wal-Mart Stores, Inc.*, 281 Ga. App. 132 (2006) (affirming summary judgment for defendant where testimony in record showed that store performed its normal inspection procedures on day of incident and plaintiff could not demonstrate how long mat lay on floor); *Metts v. Wal-Mart Stores, Inc.*, 269 Ga. App. 366 (2004) (affirming summary judgment for defendant

15

in case of plaintiff injured by boxes falling from top of shelving area where no evidence that display rack was defective in design or construction, no evidence that boxes were stacked in dangerous or hazardous manner, and employee who restocked area 15 minutes prior to incident had not noticed any problems).

Because Defendant has shown it had an inspection policy in action on the date of the incident and Plaintiff cannot show that (1) an employee was in the vicinity and could have easily seen and removed the hazard or (2) the hazard was present long enough that it would have been discovered through an inspection taken with reasonable care, Plaintiff cannot demonstrate that Defendant had constructive notice of any hazard with the shelf and cannot succeed on her negligence claim.

Therefore, the court GRANTS Defendant's motion for summary judgment [20].

### III.  Conclusion

The court GRANTS Defendant's motion for summary judgment [20].  The Clerk of Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiff's complaint.

**IT IS SO ORDERED** this 13th day of August, 2012.

 S/   J. Owen Forrester
 J. OWEN FORRESTER
 SENIOR UNITED STATES DISTRICT JUDGE